## H. J. SEIP & CO. v. MARTIN PATRIE.

1. WEIGHT OF EVIDENCE; *Province of Jury, to Determine.* A reviewing court will rarely if ever weigh the testimony upon a question of fact properly submitted to a jury, and which it was the province of the jury to determine, and disturb a judgment and verdict because not sustained by sufficient evidence, even when the preponderance would seem to be against the finding of the jury.

2. BURDEN OF PROOF; *Conflicting Testimony; Verdict.* Where the issue is one of fact, and each party introduces evidence competent to be considered by a jury, and the court submits it for their decision, and the jury find against the party on whom is the burden of proof, and the trial court approves the verdict by refusing to grant a new trial, this court cannot reverse the judgment upon the ground merely that the verdict of the jury is against the evidence.

### *Error from Washington District Court.*

REPLEVIN, brought by *Seip* and two others, as partners, against *Patrie*, sheriff, etc., to recover sixty tons of stone-coal. Plaintiffs claimed as owners. The sheriff justified his taking under an execution issued to him in favor of one Carpenter against the goods and chattels of the St. Jos. & D. C. Railroad Company, and he alleged that the property belonged to said railroad company. Trial at the November Term 1875. Verdict and judgment for the defendant, and *Seip & Co.* bring the case here.

*J. D. Brumbaugh*, for plaintiffs.
*J. W. Rector*, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by H. J. Seip & Co. against Martin Patrie, to recover the possession of certain stone-coal. The only grounds upon which the plaintiffs ask a reversal of the judgment below are, that the verdict upon which such judgment was rendered is against the evidence, and that, for that reason, the court below erred

in refusing to set aside such verdict, and in refusing to grant a new trial. There is no claim that the court below erred in any ruling prior to overruling the plaintiffs' motion for a new trial; and from anything appearing in the record, the court may have taken the same view of the law of the case that the plaintiffs did.

We cannot say that the verdict is against the evidence. We cannot say from the evidence that the plaintiffs ever owned the coal in controversy, or that they ever had the slightest right to the possession thereof. The evidence would seem to show that the plaintiffs entered into a contract with the St. Joseph & Denver City railroad company, to furnish coal to such company upon condition that the coal should remain the property of the plaintiffs until the same should be used or paid for, and that the plaintiffs furnished coal under said contract to said company at St. Joseph, Missouri. The evidence also shows that the defendant, who was sheriff of Washington county, in this state, by virtue of an execution held by him against said railroad company levied upon the coal now in controversy as the property of such railroad company, and took the same from the possession of the company at Hanover, Washington county. But the only evidence that tends to show that the coal levied upon by the defendant was ever the property of the plaintiffs, is in the testimony of H. J. Seip, one of the plaintiffs, as follows:

"This coal, levied upon by the defendant, was a portion of the coal furnished under said contract." "At the time sheriff Patrie, the defendant, levied on said coal, I was doing business at St. Joseph, Missouri, 125 miles from Hanover, Kansas." "The coal the defendant Patrie levied on was part of the coal I furnished the railroad under said contract, for 1875. The day the coal was taken I was notified he had taken sixty tons of it. It was hearsay to me. Said coal was then worth at Hanover about six dollars per ton. I know this was my coal, because sheriff Patrie told me before the first trial of this case that he had levied on my coal."

Sheriff Patrie however testifies as follows:

"I never told the plaintiff Seip I levied on his coal, or any coal at all. When I took the coal I was satisfied it really

belonged to the railroad company, and not to Seip, or any one else,, or I would not have taken it. The company then had it in their possession."

There was no other evidence showing where the railroad company got the coal upon which the defendant levied. There was no evidence showing whether the railroad company ever purchased coal from any other person, or received coal from any other source, or not. There was no evidence showing whether the railroad company ever carried coal as a common carrier or not, or whether they ever had any coal in their possession, except the coal in controversy, and the coal furnished by the plaintiffs. This lack of evidence we think is against the plaintiffs, instead of in their favor. The burden of proof rested upon the plaintiffs. It devolved upon them to show that the coal levied upon by the defendant was a part of the coal furnished by them to the railroad company, and it did not devolve upon the defendant to show that it was not such coal. There was, we think, sufficient evidence from which the jury might have found the fact of ownership in favor of the plaintiffs. But the jury found generally against the plaintiffs, and as the case is presented to this court, we must infer that the jury also found the fact of ownership against them. That is, we must infer that the jury found that the coal levied upon by the defendant was never any part of any coal furnished by the plaintiffs to the railroad company. The plaintiff Seip did not pretend to know from his own personal knowledge whether the coal levied upon by the defendant was a part of the coal furnished by the plaintiffs to the railroad company. All he knew about it, was from hearsay. He testified however that the defendant told him that the coal levied upon was his coal. This was good evidence, and sufficient if it had not been denied. But the defendant testified that he never told Seip any such thing. And we must infer from the verdict that the jury believed the defendant. Now, taking all the evidence in the case together, we cannot say, as against the verdict of the jury and the approval thereof by the district court, that the ver-

dict is against the evidence. And we certainly cannot reverse the judgment of the court below on that ground.

The judgment will be affirmed.

All the Justices concurring.