THE UNION PACIFIC RAILWAY CO. v. C. M. DYCHE.

1. FEDERAL COURT—*Petition for Removal, Properly Denied.* In an action against a railroad corporation to recover damages for the destruction of a field of rye by the diversion of a natural watercourse, the corporation filed a petition for removal to the federal court on the ground solely that it was a corporation organized under the act of congress to aid in the construction of a railroad to the Pacific. *Held,* That the petition was properly denied.

2. ———— The rule laid down in *Palmer v. Waddell,* 22 Kas. 352, as to what constitutes a natural watercourse, reaffirmed.

3. WATERCOURSE; *Damages; Insufficient Defense.* Where a railroad company, by the digging of a ditch along its track, diverts the flow of a natural watercourse, wholly or in part, to the injury of an adjoining land-owner, it is no defense to an action to recover for such damages that the digging of the ditch was necessary for the protection of its track, or that the ditch was wholly on land owned by it in fee.

*Error from Riley District Court.*

THE opinion states the case. At the March Term, 1883, plaintiff *Dyche* recovered a judgment for $202.50 and costs against the *Railway Company,* which brings it to this court for review.

*J. P. Usher,* for plaintiff in error.

*Green & Hessin,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action commenced by defendant in error, plaintiff below, in the district court of Riley county,

to recover of the railroad company damages for the destruction of a field of rye, caused, as alleged, by the diversion of a natural watercourse. The defendant answered with a general denial, and also that the damages sustained were caused by the act of plaintiff. In due time the defendant filed its petition and bond for the removal of the case to the federal court. The ground upon which the removal was asked was that the defendant was a corporation, created and existing under the act of congress to aid in the construction of a railroad from the Missouri river to the Pacific ocean. The district court refused to order a removal. This is the first matter complained of.

We. think the decision of the district court was right, and must be sustained. We do not care to enter into any extended examination of this question, and for these reasons: The question is one whose final determination rests with the federal supreme court. One or more cases involving this question have been decided in the circuit court of the United States of this circuit, and are now pending on appeal in the supreme court. We are aware of a difference of opinion between federal judges, but the judges of this circuit hold such a case not removable. Besides the weight which is due to the opinion of judges of such eminent ability as Justices Miller and McCrary, who united in this decision, it is well that there should be accord, so far as possible, between the federal and state courts in each district. So, without further discussion, we simply express our concurrence with the views of those judges on this question, and sustain the ruling of the district court.

To understand the further questions in this case, a brief statement of the facts as developed by the testimony is necessary. Plaintiff was the owner of a farm lying east of the Fort Riley military reserve. Through that farm and through the reserve, the defendant's railroad runs, the right-of-way through the farm being granted by deed from the plaintiff in fee simple, and through the reserve by act of congress. On the south side of the railroad track and adjoining the reserve,

plaintiff had, in the spring of 1881, a field of rye of about thirty-seven acres. That field was flooded, and in consequence thereof the bulk of the crop was destroyed. North of the railroad track about one hundred and twenty rods, the ground rises in bluffs of considerable height. Between the railroad track and the foot of the bluffs, runs a wagon-road. In these bluffs on the reserve, just west of plaintiff's farm, are three ravines, through which the water from the hill-country back of the bluffs flows down to the Kansas river, which runs along the plaintiff's land on the south. From these ravines the water flows in well-defined ditches, uniting just above the north side of the wagon-road; then flows over the road through a slough or depression to the railroad track; thence through a culvert built in the railroad track, and from there onward through a slough, or drain, or ditch, to the Kansas river. The railroad track with the culvert was completed before 1870. This culvert was on the reserve west of plaintiff's land. In the fall of 1880, the railroad company enlarged and deepened a ditch on the south side of the railroad track, running eastward from this culvert to the field in which, in the spring of 1881, the plaintiff had his rye. Prior to that time, there being something of an elevation between the culvert and the rye-field, the water flowing through these ravines, slough and culvert passed southward to the river, and none of it reached the plaintiff's field. But in the spring of 1881, owing to the enlargement of this ditch, some of the water coming through these ravines, etc., flowed eastward through the ditch and covered the field, and flooded it for a period of about thirty days, destroying the crop then growing.

The question in the case is, whether the railroad company is responsible for the destruction of this crop. Of course, to establish this liability, two things are necessary: First, that the flow of water through these ravines, ditches, sloughs, etc., was the flow of a natural watercourse; and second, that by the enlargement and deepening of the ditch above mentioned, the flow of that watercourse was diverted. The instructions of the court as to what constitutes a natural

watercourse were correct within the rule laid down in the cases of *Palmer v. Waddell*, 22 Kas. 352; and *Gibbs v. Williams*, 25 id. 214. With that rule we are satisfied, think it based on correct principles, and in accord with the later and better authorities. Of the existence of a natural watercourse, within the terms of that rule, there can be no doubt. An area of country of several hundred acres (one to two sections, the witnesses state) is drained. The country is bluffy, and deep ravines have been cut in the hills for the outflow of water falling on this surface. In one of the ravines there is a small perpetual flow from a spring, evidently, although the bulk of the water flowing through these ravines is from rain and snow. The configuration of the country is such that they deserve protection as natural watercourses. The same may be said of the ditches running from the foot of these ravines and uniting just north of the wagon-road. As to that extending thence to the river, and which is called by different witnesses a drain, a ditch, a slough, a swale, and a depression, the testimony is far from satisfactory; and yet we are constrained to say that there was enough to uphold the verdict. That by the deepening of the ditches along the railroad track the water flowing down through these ravines, ditches, etc., was partially diverted and thrown upon the plaintiff's field of rye, cannot be doubted. Possibly the flood was so great that the land would have been covered anyway. Certainly the railroad ditches helped, if they did not cause the overflow. Counsel contends that, because the company owned the fee of the right-of-way, and because the ditches dug and deepened by it were so dug and deepened for the necessities of its track, its action was proper, and afforded no ground of complaint by plaintiff of its results, and challenges the contrary ruling of the court in these respects. The court was right. A party cannot on his own land, or because of the necessities of his own business, divert the flow of a natural watercourse without paying any party injured the damages he sustains therefrom. This doctrine is

clear, and a railroad company has no greater rights than any other land-owner.

These, we believe, are all the material questions, and in them appearing no error, the judgment will be affirmed.

All the Justices concurring.