ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY
v. JOHN W. LONG..

No. 150.

1. ACTION — *whether ex contractu or ex delicto determined by
   pleadings.* The question as to whether an action is *ex con-
   tractu* or *ex delicto* is to be determined solely by the pleadings,
   and a petition which demands compensation for the wrongs com-
   mitted upon the plaintiff and not upon an implied promise to re-
   imburse his estate, declares upon an action *ex delicto.*

2. INSTRUCTION — *based upon facts found by jury to be not true,
   refusal of, not erroneous.* An instruction predicated upon the
   theory that a ticket was from Topeka to Reading, could not aid
   the jury when they find that the ticket was in fact from Topeka
   to Emporia.

3. EXEMPLARY DAMAGES — *jury finding passenger evicted from railroad train through gross negligence of company's agents, may award.* Where a passenger is forcibly evicted by the agents of a railroad company from its train upon which he has a legal right to remain, and where the jury find that the said agents, in the examination of the ticket presented by the passenger and in evicting him from the train, are grossly and wantonly negligent of the rights of such passenger, they may award exemplary damages.

Error from Butler District Court. Hon. C. A. Leland, Judge. Opinion filed March 5, 1897. *Affirmed.*

This action was brought in the District Court of Butler County by John Long as plaintiff against the Atchison, Topeka & Santa Fe Railroad Company as defendant. The first count in the petition alleges, that on the fourth day of March, 1888, said Long bought and paid for a ticket from said Company, entitling him to ride as a first-class passenger from Topeka to Emporia, and that he entered the cars of the Company and conducted himself in a gentlemanly and proper manner ; that after the train had passed Reading and before it had reached Emporia, the agents and servants of the Company did, on the fourth day of March, 1888, in the night time, on a stormy night, wrongfully, forcibly, wantonly and unlawfully force and expel him from the cars and refuse him permission to ride any further upon the ticket without his paying additional and illegal charges, thereby willfully and wantonly placing him in the ignominious position of being put off the train which was filled with passengers ; and other wrongs then and there wrongfully, forcibly, wantonly and unlawfully done to said Long, to his damage in the sum of one thousand dollars.

The second count of the petition alleges that the Company by its collector demanded from Long sixty cents

to permit him to continue his journey to Emporia, and by the means and in the manner aforesaid, wantonly, maliciously and unlawfully compelled him to pay said sum of sixty cents for the privilege of completing his journey on the cars to Emporia, to his damage in the sum of fifty dollars. The prayer is for judgment for $1,050.

The evidence is uncontradicted that, just before the departure of the west-bound train and between twelve and one o'clock in the nighttime of March 4, 1888, Long asked the agent of the Company, who was selling tickets at the Topeka passenger depot, for a ticket to Emporia; that he paid $1.85, the regular price therefor, and received a ticket; that he glanced at the ticket and thought it was all right; that if it had not been from Topeka to Emporia he thought he would have noticed it; that he gave the ticket which he procured of the Topeka agent, to the collector when he came for it, after leaving Topeka; that shortly after leaving Reading the collector demanded of him sixty cents as the fare from Reading to Emporia; that Long refused to pay the amount and the collector summoned the conductor and brakeman and the train was stopped and the conductor took hold of Long and ejected him from the car; that when he had reached the steps of the platform of the car he discovered that he was near no station or house, and the night being cold and stormy he paid the sixty cents under protest and rode to Emporia. There was some conflict in the testimony whether the ticket read to Emporia or Reading, and as to the conduct of the parties during the transaction. The jury in their special verdict find that the ticket read from Topeka to Emporia, and that the conductor used no more violence towards Long than was necessary to evict him from the train.

The verdict was in favor of Long for the sum of $675.60. The special findings show that $25 was for injury to plaintiff's feelings; sixty cents was for pecuniary loss; $475 was for exemplary or vindictive damages; $25 was for expenses; and $150 was for attorney's fees. The $25 for expenses was remitted by the plaintiff and judgment was rendered in favor of Long and against the Railroad Company for the sum of $650.60.

The Railroad Company alleges that there was error in the trial and judgment, and brings the case here for review.

*A. A. Hurd*, and *Stambaugh & Hurd*, for plaintiff in error.

*Redden & Schumacher*, for defendant in error.

Dennison, P. J. The plaintiff in error alleges and argues ten assignments of error, but as several of them depend upon whether this action is an action *ex contractu* or an action *ex delicto*, we will first consider this question which is to be determined solely by the pleadings.

The first count in the petition, after alleging such a state of facts as would entitle Long to remain in the car until it should reach Emporia, charges that the Railroad Company, by its agents, etc., disregarding its duty as a common carrier of passengers and its agreement with Long in selling him the ticket, did, in the nighttime, on a stormy night, wrongfully, forcibly, wantonly and unlawfully force and expel Long from its cars, refused him permission to continue upon his journey without his paying additional and illegal charges, thereby

1. Action ex delicto.

willfully and wantonly placing him in the ignominious position of being put off the train which was filled with passengers, and then, there and thereby, wrongfully, forcibly, wantonly and unlawfully did to Long other wrongs, to his damage in the sum of one thousand dollars.

To hold that this count is an action *ex contractu*, is to construe this language as declaring in effect that the Railroad Company demanded of Long an additional amount of fare, under an implied contract that it would pay it back again. This is not the correct construction to give to the language used. This count declares the things necessary to show Long's right to ride in the car to Emporia and the illegal demands made upon him by the agents of the Railroad Company, and declares his damage to be one thousand dollars for the wrongs committed against him in expelling him from the train, and placing him in the ignominious position of being put off the train. This clearly charges an action *ex delicto*.

The second count of the petition reiterates the charges contained in the first count, and in addition thereto alleges that the Railroad Company by its agents demanded of Long sixty cents to permit him to ride to Emporia, and that by the means and in the manner aforesaid wantonly, maliciously and unlawfully compelled Long to pay sixty cents for such permission, to his damage in the sum of fifty dollars. This charges the Railroad Company with expelling him from the train and placing him in the ignominious position of being put off the train, in order to wantonly, maliciously and unlawfully compel Long to pay an additional sixty cents to continue his journey.

This count demands compensation for the wrongs committed upon Long, and not upon an implied promise to repay the sixty cents, and is an action *ex delicto*.

Other errors are based upon the theory that the ticket which Long received and presented to the collector was from Topeka to Reading.

2. Failure to give instruction immaterial, when,

Special stress is placed upon this point because of the refusal of the court to give certain instructions asked for by the Railroad Company. The first answer to this contention is that the court instructed the jury:

" If plaintiff did not have a ticket entitling him to passage beyond Reading, he of course cannot recover, and your verdict should be for the defendant."

The second answer is that the jury specially found that the ticket was from Topeka to Emporia. This finding is in the answer to the first special question requested by the plaintiff below, and the answer to the second special question requested by the defendant below. No objection was taken to the answers and no exception saved, and these findings therefore stand as the facts in the case. The instructions refused, which were predicated upon the theory that the ticket was from Topeka to Reading, could not aid the jury when they find that the ticket was in fact from Topeka to Emporia. *A. T. & S. F. Rld. Co. v. Huitt*, 1 Kan. App. 781; *Woodman v. Davis*, 32 Kan. 344; *St. L. & S. F. Rly. Co. v. Bennett*, 35 id. 399.

The plaintiff in error contends that there was no evidence of gross negligence, wantonness or a willful disregard for the rights of Long by the agents of the Railroad Company, and that there was nothing upon which to base exemplary damages. There was evidence tending to prove that Long gave to the collector

3. Exemplary
damages proper,
when.

a ticket entitling him to ride to Empo- ria. The finding of the jury establishes this as a fact. Long was therefore not a trespasser upon the train. He had paid his fare and was entitled to remain in his seat unmolested un- til he reached Emporia. The most favorable view of the transaction in favor of the plaintiff in error is that the collector was mistaken as to who gave him the ticket to Reading, or was mistaken as to the destina- tion printed upon the ticket he received from Long. If the mistake of the collector was due to such a reck- less disregard of the rights of Long as established gross negligence, amounting to wantonness, and the jury so found, they might find exemplary damages. *S. K. Rly. Co. v. Rice*, 38 Kan. 404. The jury found that the conductor and collector acted in a wanton manner toward Long in compelling him to yield to their demands without considering the place or surroundings of the ejectment. There is evidence upon which to base this finding. The forcible evic- tion of Long from the car in which he had a right to remain is certainly a wrong which is accompanied with great injustice and outrage, but to make such about two o'clock in the morning, when the weather was cold and stormy, at a place on the prairie with no human habitation in sight, is at least such a reckless indifference to the rights of Long, and such an utter disregard of consequences to his life and health, as would justify the jury in finding that the agents of the Railroad Company were grossly and wantonly negligent of his rights and welfare.

The interests of the traveling public demand that the agents of a common carrier of passengers shall carefully scrutinize the ticket presented to them by a passenger, and see that said passenger is permitted to

ride unmolested to his destination as stated on the ticket, provided the passenger conducts himself in an orderly manner. The consequences to the passenger might be so serious that it will not do to say that a conductor or collector can omit this duty without being guilty of gross and wanton negligence toward the rights of such passenger. Suppose in this case that Long had been without the sixty cents to pay the additional fare, and, having no acquaintance there to have loaned it to him, he would have been left on the prairie, away from any human habitation, in the nighttime, in the midst of a snow-storm, during a cold March night. The safety and comfort of passengers require that such things shall not be tolerated. Slight diligence upon the part of the collector would prevent such an eviction. The want of such diligence is gross negligence, and under the circumstances of this case it was a wanton disregard of Long's rights.

Judgments for exemplary damages have been sustained in cases very similar to this; in *S. K. Rly. Co. v. Rice,* supra; *K. P. Rly. v. Kessler,* 18 Kan. 523; *Sawyer v. Sauer,* 10 id. 466, and other cases.

The remaining errors complained of relate to the introduction and rejection of evidence; to the conduct of the attorneys for Long in addressing the jury; and to the refusal of the court to require the jury to answer certain special questions. To analyze and discuss each of these questions would extend this opinion to an unreasonable length and could serve no good purpose. Each of them is decided in accordance with well-established decisions of our Supreme and Appellate Courts. We have made a careful examination of the record and find that no error, prejudicial to the substantial rights of the plaintiff in error, was committed either in the introduction or rejection of evi-

dence; in the argument of counsel for defendant in error; or in the refusal of the court to require the jury to return to the jury room and make and return answers to certain questions. The questions had either been sufficiently answered or they were upon immaterial matters.

The judgment of the District Court is affirmed.