Kimball and others v. Connor, Starks and others.

---

SAMUEL KIMBALL *et al.* v. JESSE C. CONNOR, NATHAN STARKS, *et al.*

*Error from Douglas County.*

Connor commenced action on note and to foreclose a mortgage on real property given by Kimball, and made Starks and others parties defendant. Starks answered, setting up a prior mortgage (with note) given by Kimball on the same real property and on other and personal property, and both obtained judgment and a decree for the sale, first of the personalty to apply on Starks' judgment, and second, the realty to apply on that, and then on Connor's judgment. It was *held* that the spirit of the Code requires that so far as possible, all controversies concerning a particular subject matter shall be concluded by one proceeding, and it is made the

duty of the court to have all, appearing to be interested therein made parties, to the end that their rights may be adjudicated.

All parties in interest being present, the power of the court to render such judgment as the facts may require, under the pleading, is plenary.

The old systems of practice are by the Code abolished; it furnishes the facilities in the "civil action" for all that could be accomplished by former systems. A decree or a judgment or a compound of both may be rendered therein.

The answer of the defendant Starks setting up his note and mortgage against his co-defendant, is what was formerly called a cross-petition and in effect is still the same. The reply his co-defendant makes to it, is in effect an answer to the cross-bill.

Under the Code when the original summons is served in such a case, the defendants are in court for every purpose connected with the action and the defendants served are bound to take notice of every step.

In such case *held* that it is not error for the decree to direct the sale, first of the personal property and to apply the proceeds to the payment of the mortgage containing it.

*Semble*, section five, Bill of Rights, state constitution, does not require every trial to be by jury, nor that every issue triable by jury at the adoption of the constitution should remain so, but *held* that trial by jury is thereby guaranteed only in those cases so triable at common law; in statutory and chancery proceedings, the legislature is competent to dispense with the jury.

The act of February 9th, 1864, for restoring burned records in Douglas county, not providing a common-law action, is not in conflict with that constitutional provision.

The proceeding of that act is to restore the evidence of existing judgments, and the order restoring, is not a judgment.

The provision of that act authorizing the judge to rely upon his own recollection of the facts, is void. It appearing in this case that the judge did not so rely, but made the order upon admitted facts, the plaintiff was not aggrieved.

The facts of the case are substantially as follows:

The defendant in error, Jesse C. Connor, commenced an action April 10th, A. D. 1860, in the District Court of Douglas county against the plaintiffs in error and the defendant in error, Nathan Starks, to obtain judgment on a note made by said plaintiffs in error and one Frederick Kimball, now deceased, to said Connor for four hundred dollars, dated October 5th, 1859, payable six months after

date with interest at three per cent per month until paid, and for foreclosure of mortgage on reserve number two in the city of Lawrence, of same date, made to secure the payment of said note.

The defendant Nathan Starks, answered setting up a prior mortgage on the same property and other personal property described, by said Kimball, March 1st, 1858, to said Starks, to secure the payment of three several promissory notes of same date,—one for eight hundred dollars payable six months from date, one for one thousand dollars payable one year from date, and the other for twenty-five hundred dollars, payable two years from date, all drawing interest at twelve per cent per annum, and prayed for judgment against said Kimball on said notes, and a decree that said mortgaged property should be sold and the proceeds of said sale applied first, to payment of his said Starks' judgment. The defendants Kimball, did not appear. On the 14th day of May, A. D. 1860, at the May term of said District Court judgment was taken according to the prayer of said Starks' answer, but the decree of foreclosure did not describe the property to be sold, but referred to the petition and answer for a description of it.

On the 3d day of July, A. D. 1861, the said Jesse C. Connor and Nathan Starks again appeared, took an order amending the original decree, so as to make it include a description of the property.

The defendant Kimball afterward, on the 25th day of April, A. D. 1862, moved the court to set aside the amended decree, which motion was overruled, and the said Kimballs filed their petition in error in this court, praying a reversal of the original and amended judgment, and at the July term of this court, A. D. 1862, consented to a reversal, and the cause was remanded to the District Court for further proceedings.

Afterwards at the October term, A. D. 1862, of said District Court, another judgment was taken upon the same

pleading, and a decree of sale of all the mortgaged property. The personal property described in Starks' mortgage first to be sold, and the proceeds of said sale to be applied to the payment of Starks' judgment, and if the proceeds of said sale should not be sufficient to satisfy said judgment, then the real estate described therein should be sold, and the proceeds arising therefrom or so much thereof as might be necessary, should be applied to the full satisfaction of said Starks' judgment, and that the balance of the avails of the sale of said mortgaged property or so much thereof as might be necessary be applied to the payment of the judgment so rendered in favor of the said plaintiff, and that execution should issue for any balance still remaining unpaid on said judgments, &c., the defendant Kimball simply appearing and objecting to any judgment against them in favor of their co-defendant Starks, on the ground "that they had not been commanded to answer in relation to the demands of said Starks, and that no action was in existence between them and the said Starks;" and also objected to any judgment for the sale of their personal property on the ground "that it was not included in the plaintiff's mortgage nor described in his petition," which objections were overruled and a bill of exceptions was made and allowed.

On the 21st day of August, A. D. 1863, before any further proceedings were had, the records of the District Court were burned up and destroyed, including the record of proceedings in this case, and the defendant Frederick Kimball killed.

On the 6th day of January, A. D. 1865, Nathan Starks filed a petition against the defendants in the original suit, who were living, and the administrator of Frederick Kimball, deceased, to restore the record of said judgment in accordance with the provisions of "an act relating to records and proceedings in the county of Douglas," approved Feb. 9th, A. D. 1864.

53

On the 13th day of May, A. D. 1865, the administrator aforesaid, moved the court to dismiss the petition of said Starks filed to restore said record as to him said administrator, on the ground that said act did not authorize such proceedings against an administrator, and the motion was sustained.    The other defendants    Kimball, then demurred to said petition on the ground that it did not state facts sufficient in law to constitute a cause of action, and moved to have said petition dismissed, because it appeared that one of the judgment debtors in the original judgment was dead, and after argument thereof said demurrer and motion were overruled with leave to defendants to answer.

Defendants answered, trial was had and the record of said judgment reinstated, and the said Kimballs filed their petition in this court praying that the judgment of the court restoring the record of the original judgment be reversed, and that in case the same be not reversed that the original judgment may be reversed.

*Cobb & Chadwick* and *Riggs & Riggs*, for plaintiffs in error.

*Thacher & Banks*, for Jesse Connor.

*John Hutchings*, for Nathan Starks.

*Cobb & Chadwick* and *Riggs & Riggs*, submitted:

I. , So much of the act under which the proceedings were had as authorized the establishment of a judgment, is void.    Because

1st.    It denies the parties the right of trial by jury. *Sec. 7 of the Act*; *Laws* 1864, *p.* 91.

2d.    The constitution of the state, (sec. 5, Bill of Rights) declares "the right of trial by jury shall be inviolate." *Comp. L., p.* 50.

3d.    This provision clearly guarantees the right of trial by jury of all that class of questions properly triable by

jury, when the constitution was adopted and went into effect.

4th. At that time the Code of 1859, was in force, declaring that "issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived or a reference ordered as hereinafter provided." *Code, sec.* 274.

And the next succeeding section declares that " all other issues of fact, shall be tried by the court, subject to its power to order any issue to be tried by a jury or referred as provided in this Code."

By these two sections the defendant clearly had in every action, a right to a jury trial of course, or a trial by jury of such issues in the cause as the court should deem proper to be tried by jury, and this right, as has been shown, has been guaranteed forever to the people of this state by their constitution.

II. If it be argued that the determination of a cause of this class is not a trial, we answer,

1st. The act in question defines it as a trial. " The issues so joined shall be tried by the court." *See section* 7 *above cited.*

2d. It conforms completely to the definition of a trial in the Code. *Sec.* 273.

This law provides for the filing of a petition, an answer and reply, and then that the issue so joined be tried.

· 3d. It is followed by all the consequences of a trial, the recovery of money from the defeated party, or the deprivation of his property by the adjudication of a court. What matters it that the action of the court is called the establishment instead of the rendition of a judgment ? The right of trial by jury is matter of substance and not of form, and is not to be defeated by newly invented phrases applied to the adjudication of the courts.

It is substantially the old action upon judgment, much used in the common law practice, with the substantial dif-

ference only, that the record, its contents and its loss, must be established by parol; questions of fact, eminently adapted to trial by jury.

4th. Under the common law practice, an action might have been brought directly upon the judgment, and another judgment recovered thereon. *See* 3 *Abb. Dig.*, *p.* 526, *sec.* 209, *and cases there cited*; *Id.*, 211, *and cases cited*; *Id.*, 214.

5th. In that class of cases where issue was joined as to the existence of the record only, the record itself being conclusive, no jury was necessary; but when any fact outside the record was put in issue, it was always tried by jury. *See* 9 *Bacon's Abr. Tit.*, " *Trial by Record*," *pp.* 556 *and* 557; *also*, 564 *and* 565 *of same volume. See also Sedg. on Stat. and Const. L.*, *p.* 613 *and* 614, *and* 545-6-7, *and cases there cited.*

III. It is void because it allows the cause to be decided upon the recollection of the judge.

1st. The constitution of this state, section 18 of the bill of rights, provides that " all persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law and justice administered without delay."

2d. The right to have remedy by " due course of law " for injuries, implies the right to " due course of law to defend against prosecutions, and not to be deprived of life, liberty or property " without due course of law."

The convention which framed, and the people who adopted the constitution, could not have intended to guarantee to each individual " due course of law " as a remedy for injuries committed, and deny due course of law to defend against injuries attempted by proceedings at law. This clause must therefore be a guarantee to the citizen against being deprived of life, liberty or property, except by " due course of law."

Justice Curtis of the United States Supreme Court, in a Rhode Island case, decided that " law of the land " is

Kimball and others v. Connor, Starks and others.

equivalent to " due process of law," and " that in it, is necessarily included the right to answer to, and to contest the charge, and the consequent right to be discharged from it unless it be proved." *Sedg. on Stat. and Const. L., p.* 610.

The statute in question does not require the case to be proved, but allows the judge to decide upon his own recollection of the facts. He is authorized to take testimony, and is also authorized to refer to his own recollection, and to make decision thereon. Thus the cause is to be decided upon grounds that cannot be reviewed, and which are known only to the judge. This is not " due process of law," but a despotism in the judge, as complete and irresponsible as was ever exercised.

If this law is valid, the same kind of legislation might be extended to all other causes, and every species of litigation in the state be determined by the recollection or pretended recollection of the triers. This surely would not be " due course of law."

IV. The court could not legally re-establish the judgment against a part of the judgment debtors, the others not being parties to the proceeding nor bound by the decision of the court.

1st. The act in question authorizes the establishment of the judgment, decree or final order. This language requires the judgment, &c., restored, to be identical in substance and effect with the original judgment, and to the same end.

The second section of the act provides that the parties plaintiff and defendant shall be the same in the petition as in the original case.

2d. The parties to these proceedings were not the same as in the original action, but the petition on its face, shows that Frederick Kimball one of the original defendants was dead when the petition was filed. This was clearly a violation of the provisions of the statute, and the judgment established was for the same reason clearly not the original judgment.

As to Frederick Kimball, there is no record of a judgment in existence, and no remedy can be had on the restored judgment against his heirs or administrators.

3d. Had Frederick Kimball been dead when the original action was commenced, his heirs must have been made parties, the mortgaged land having descended to them. (*See Barb. on Parties, pp.* 449 *and* 450, *and cases cited; also p.* 496; *Caldwell* v. *Taggart,* 4 *Pet.*, 190.) And the personal property mortgaged going to the administrator, he would have been a necessary party to protect that. 2 *Eq. Dig.*, (*U. S.*,) 435; 4 *Peters*, 190.

Had Frederick Kimball died during the pendency of the action, his heirs and personal representatives, must have been made parties before the cause could proceed further, and the joinder of such parties is held necessary by the courts for the purpose of preventing litigation and avoiding the sacrifice of property by selling the undivided interests of the parties to the action.

In this case Frederick Kimball or his heirs or administrators, not being party to the re-established decree, were not bound by it, and his interest in the property would not pass by the sale. It is very clear, therefore, that as the court could not render the original judgment without such parties, it cannot so alter the judgment in re-establishing it as to exclude one party from its operation.

V. But if the court should hold the decree re-establishing the judgment to have been legally made, it will then be necessary for the court to examine the original judgment as it is set out in the decree revising it.

1st. The defendant Starks had no right to recover judgment against his co-defendants; they having been summoned only to defend against the plaintiff's mortgage and not having appeared in the cause, had no legal notice that Starks made any claim against them.

2d. A judgment can be recovered against a defendant only by a trial or as the result of a default of some kind.

3d. A trial is the judicial examination of the issues whether of law or fact in an action. *Code, sec.* 273.

There can therefore be no trial except of an issue of law or fact.

4th. An issue of law arises upon a demurrer to the petition, answer or reply, or to some part thereof. *Code, sec.* 270.

5th. An issue of fact arises *first,* upon a material allegation in the petition controverted by the answer; or *second,* upon new matter in the answer, controverted by the reply; or *third,* upon new matter in the reply, which shall be considered controverted by the defendant without further pleading. *Code, sec.* 271.

6th. In this case there were no pleadings whatever between Starks and the plaintiffs in error, and consequently no issue of law or fact to try. There could therefore, be no trial and no judgment against them in favor of Starks, unless rendered for some default of theirs in failing to join an issue.

7th. But they had no opportunity to join an issue with Starks.

The only pleadings allowed the defendants by the Code are an answer to the petition or demurrer to the petition or reply. *Code, sec.* 93.

But in this case there is no petition or reply of Starks to be answered or demurred to, and the plaintiffs in error, therefore, could not be in default as to Starks' claim for not answering or demurring.

In what respect then were they in default as to Starks' claim?

8th. By failing to answer or demur to Connor's petition, the Kimball defendants admitted Connor's cause of action against them; but the petition contained no allegation of a cause of action on the Starks mortgage, but merely alleged that Starks claimed some lien of older date than plaintiff's, and a failure to answer that allegation, ad-

mits nothing else, and admits that only, as between them and plaintiff.

9th.   Starks has therefore recovered a judgment for money and a decree of foreclosure against his co-defendants without proof against them, and without allowing them any possible chance to defend, however groundless his claim might be.

Suppose they had offered to answer to Starks' answer, they are met with the objection that the Code prohibits such pleading.   They offer to demur and are told that the Code allows a defendant to demur only to a petition or reply.   We submit that no construction of the Code leading to such consequences can be the true one.

10th.   The provision of the 381st section of the Code that judgment may determine the ultimate rights of the parties on either side as between themselves, can have effect only, when the parties have appeared and are litigating the cause, and then only upon such pleadings and as to such matters as may be determined without violating the express provisions of the law above cited.   It cannot authorize the rendition of a judgment in favor of one defendant against another defendant in defiance of such provisions.

The New York Code, section 274, contains a similar provision, and the construction given it by the courts has been consistent with our views.   *See Voorhies' Code*, 2d *Ed., p.* 298-9, *and notes*;   *Voorhies' Code of* 1865, *sec.* 274, *note e on page* 509.

11th.   Starks should have filed his cross-petition and caused his co-defendant to be summoned to answer.   That was the settled practice in chancery.   *See* 2 *Barb. Ch. Pr.*, 126 *to* 132;   *Talbot* v. *McGee*, 4 *Mon.*, 379;   *Coop. Eq. Pl.*, 85;   *Mitt. Ch. Pr.*, 81;   *Pattison* v. *Hall*, 9 *Cow.*, 747; 6 *Paige*, 288;   7 *John Ch.*, 250;   2 *Paige*, 164;   *Lubes Eq. Pl.*, 142;   10 *Paige*, 322;   2 *U. S. Eq. Dig.*, 433.

There is nothing in the Code showing an intention to

dispense with the cross-action. The form of commencing the suit is changed from the cross-bill and subpœna, to a cross-petition and summons, and that is the only change necessary to conform to the Code.

Forms of action are abolished by the Codes, but every remedy legal or equitable, is left perfect; and under the N. Y. Code, substantially like our own in respect to pleadings, the cross-petition is fully established by judicial decisions. *Van Sant's Eq. Pr.*

12th. If the court should be of opinion that a cross-action is not authorized under the Code, then this is a case where the rights of the parties can not be enforced under the Code, and the old practice by cross-bill is still in force under section 614 of the Code.

VI. The court gave Starks a money judgment to be collected out of the property of his co-defendants after the mortgaged property should be exhausted. That certainly could not have been necessary to settle the priority of liens between Connor and Starks. It was a matter in which the plaintiff in that action had no concern, and on what grounds it was allowed, it is difficult to conjecture. Certainly it was no legal ground.

VII. 1st. The decree directs the sale of a quantity of personal property, none of which was contained in the mortgage of the plaintiff or mentioned in the petition. This property is decreed to be sold without any action having been commenced in relation to it by or against any one. This was clearly erroneous.

2d. The decree provides that the personal property be first sold and the avails applied to Starks' judgment, and if the proceeds should not be sufficient then the real estate is to be sold, and so applied, " and that the balance of the avails of the sale of said mortgaged property," or so much as may be necessary, be applied on the Connor mortgage. The effect of this provision will be, that if the personal property should be more than sufficient to pay Starks'

54

mortgage, it will be applied on the mortgage of Connor, though none of it was ever mortgaged to Connor. This, counsel will scarcely pretend is legal.

VIII. An exception is not necessary to review a decision on demurrer. *Koehler* v. *Ball*, 2 *Kans.*, 160.

IX. The decree re-establishing the judgment, in addition to establishing it, orders a sale of the mortgaged property. That was not authorized by the act under which the proceedings were had, and was injurious to the parties defendant, by making a sale which could pass but three-fourths of the title to the mortgaged property.

*Hutchings*, for Starks, defendant in error, submitted :

I.   1st. The court having obtained jurisdiction of all the defendants, originally, it had the power to hear all questions involving the subject matter, whether set forth in the petition or answer, and might give judgment "for or against" one of several defendants, and determine the ultimate rights of the parties, and might grant defendant Starks any affirmative relief to. which he was entitled. *Sec.* 381, *Civil Code*; *Comp. L.*, 186; *Kloam and Wife* v. *Bradstreet, et al.*, 7 *Ohio S.*, 325.

2d.   The petition of plaintiff below, properly brought defendant Starks in as a party, and it became the duty of the court to enforce his lien when found to be an incumbrance on the property in controversy. *Kloam and Wife* v. *Bradstreet, et al., supra.*

3d.   The answer of Starks being sufficient in substance for the relief demanded, the court would not require the filing of a cross-petition *in form*, but would treat the answer as such petition and grant all just relief demanded. *Id.*, 320 ; 4 *How. Pr. R.*, 24, 73 ; 1 *Paige*, 268.

4th.   The most that is required under the Code in such case, is the service of the answer. *Van Sant Eq. Pr.*, 326.

5th. Filing an answer under our Code, is eqivalent to serving it, as per the New York Code.

6th. After having been duly served, defendants will take notice of all subsequent steps.

II. The decree for the sale of the personalty in the Starks mortgage was unnecessary; the title absolute thereof vested in Starks on default, and Starks had an immediate right of possession or to dispose of it in any other way. *Comp. L.*, 355, sec. 12; 1 *Abb. Dig.*, 573-4; 1 *N. Y..* 496; 7 *How. Pr.*, 251; 12 *Barb.*, 677.

(*a.*) Defendants Kimball had a right to complain of the judgment as to the personalty; after default they had no interest in it, but held it simply as bailees or by sufferance. 1 *Abb. Dig.*, 574; 6 *Duer*, 83, 96; 6 *Paige*, 583.

(*b.*) But the judgment simply provides after ordering the sale of personalty, that enough of the proceeds of the real estate be applied to Starks' judgment to satisfy it,—balance of avails of " *mortgaged property* " applicable to payment of the Connor judgment.

(*c.*) The Supreme Court will presume that the court below intended by the use of the term " mortgaged property," the real estate covered by both mortgages.

III. The administrator of Frederick Kimball, deceased, was properly made a party to the proceeding to restore the record.

(*a.*) The first section of the act of Feb. 9th, 1864, applies to " any person or persons interested, (sec. 1, Laws 1864, p. 89,) and the second provides the proceeding, and that " parties plaintiff and defendant, shall be the same in the petition as in the original case." The intent of this act was to provide for restoring lost records, and it was the duty of the court to carry out that intent. Frederick Kimball, one of the parties to the original record being dead, his representative was the proper person to be made party. The act referred to is remedial and should be beneficially construed. *Sedg. Const. Constr.*, 359, 360, 361; 2 *Ohio St.*, 431; 3 *N. Y.*, 479.

(*b.*)   " Courts are not confined to the letter of the law in giving it construction."

(*c.*)   Courts frequently qualify or enlarge the ordinary meaning of words in construing statutes.   The intent may be gathered from the cause or necessity, even though contrary to the ordinary meaning of the words.   " It has been decided that a thing within the letter was not within the statute, unless within its intention."   *   *   *   Every statute should be construed with reference to the object, and the will of the law makers is best promoted by such construction as secures that object and excludes every other.   1 *Ohio R.*, 480-1 ; 3 *Ohio St.*, 85 ; 5 *Barb.*, 156 ; *Id.*, 9 ; 13 *N. Y.*, 78 ; *Bac. Abr.*, *Tit. Statute L.*, 5, 10 ; 15 *John*, 358 ; 1 *Kent Com.*, 562 ; 3 *Barb.*, 429.

(*d.*)   Whenever the intent can be discovered it ought to be followed.   5 *Abb. Dig.*, (*N. Y.*,) 79, *sec.* 29 ; 15 *John*, 380 ; 3 *Cow.*, 89.

(*e.*)   The record of course, when restored must be precisely like the one destroyed, and the parties thereto must be the same.   The object of making the administrator a party to the proceeding to restore the record, is to give him notice so that he may defend the estate against the establishment of an erroneous record.   The proceeding creates no new liabilities on the part of the judgment debtor, nor in favor of the judgment creditor.   It is simply a special proceeding to restore the evidence of a judgment already in existence.

IV.   The act authorizing the restoration of the lost records of Douglas county, is not in conflict with the constitutional provision guaranteeing the right of trial by jury as claimed by plaintiffs in error.

(*a.*)   The constitution only guarantees the right of trial by jury in those cases in which it existed when our constitution was framed.   *Sedg. Constr.*, 547-8.

This is not one of those cases, nor was the issue in this proceeding an " issue of fact arising in an action for the

recovery of money or specific real or personal property" under section 274 of the Civil Code. It was clearly an issue to be tried by the court.

(*b.*) This proceeding was merely a special statutory proceeding such as are constantly heard and determined by courts in all states without the intervention of a jury.

V. The act is not void for allowing the judge to refer to his own recollection of what the record was.

(*a.*) The proceeding is one to restore the records; it is not an action for " injuries suffered in person, reputation or property," and is not within the constitutional prohibition. It is a proceeding of the court to restore its own records. The judge would have the same right to refer to his own recollection as to that, that he would in settling a bill of exceptions where parties could not agree.

(*b.*) But it does not appear that the judge of the court in this case did refer to his own recollection. It does appear that it was decided on the evidence adduced by the parties. The court found that the allegations of the petition and of the answer were both true.

(*c.*) The plaintiffs in error cannot take advantage of this as error, as no objection was made at the time on the trial below. They are not shown to have been injured or prejudiced by the findings.

*By the Court,* CROZIER, C. J.

Considering them in their natural order rather than in the order in which they have been presented by counsel, the first assignment of error would be, that the court below erred in rendering judgment in favor of Starks. The ground of this objection is, that because Starks was a defendant, he could not lawfully have judgment against his co-defendants, although a prior mortgagee of the same premises sought to be subjected by the plaintiff to the payment of his mortgage. The position is that Starks should have filed a cross-petition and caused a summons

against his mortgagors to be issued and served, so that the question is, whether he, being a prior creditor and mortgagee of the same persons and premises named and described in the petition, having been made a party defendant by the junior mortgagee and called upon to set up his claim, was entitled to judgment against his debtors who were in court with him, although appearing on the same side of the case? It is not denied that if the answer of Starks had been called a cross-petition, and a, summons had issued thereon and served, but that he would have been entitled to the judgment. Were these omissions fatal?

The letter and spirit of the Code require that, so far as possible, all controversy concerning a particular article of property shall be concluded by one proceeding. It is made the duty of the court to require every body appearing to have an interest in the controversy, to be brought before it to the end that their rights shall be adjudicated, thereby putting an end to all controversy upon the subject, and preventing a multiplicity of suits. When all the parties are present, the power of the court to render such judgment for or against plaintiffs or defendants, as the facts may require under the pleadings, is plenary, and the case at bar illustrates the eminent propriety of the provisions of the Code under consideration. Here are two persons, each having claims against all the owners, and are mortgagees of different priorities of the same real estate. The one having the second lien desires to realize. He commences his proceeding, making the common debtors parties, and seeks to subject the property upon which both have liens, to the payment of his claim. He knows the other mortgagor's claim must be first satisfied, and the first step in that direction is to be certain as to the amount of it, and the only proper way to do that is to get him before the court and require him to set out his claim, so that it may be ascertained by judicial inquiry. No question is

made against the propriety of such a course, but the objection is, that the paper by which the claim is made manifest, is an answer of a defendant, and no provision of the Code authorizes a demurrer by a defendant to such answer, nor can it be controverted by way of reply by the debtor, he being also a defendant. And it is further objected that the debtor is not notified by the original summons, of the claim that is made in the co-defendant's answer. Hence, it is claimed, the necessity of a cross-petition and a summons thereon.

A fair construction of the Code will avoid all these imaginary difficulties. The old systems of practice, legal and equitable, are abolished, and the Code furnishes the facilities, and was intended for accomplishing in the "civil action" all that could be arrived at by both the former systems. A decree or a judgment technically considered, or a compound of both, may now be rendered in one action. The petition of the plaintiff sets out his cause of action. The answer of the defendant, who is a mortgagee of the property mentioned in that petition, sets out his claim. The answer of the debtors discloses their defenses to each, and replies of the claimants admit or deny them. What difficulty then can there be in the business? Very manifestly, nothing but in names. The answer of the defendant setting up his claim is what formerly was a cross-petition in name, and in effect is still the same, although called an answer. The reply his co-defendants may make to it, is, in legal effect, an answer, although called by a different name. And all this is within the spirit of the Code, and a mere difference about names ought not to operate to defeat it.

As to the issuance and service of a summons, there can be no difficulty. When the original summons is served the defendants are in court for every purpose connected with the action, and the defendants served are bound to take notice of every step taken therein.

II.   The mortgage of Starks included some personal property which was not covered by the mortgage of the plaintiff, and the decree directed it to be first sold and the proceeds applied in payment of Starks' claim.   Some objection has been made to the judgment on this account, but the court has been unable to see the force of it or how it could in any way work hardship to anybody, or why it was not the very thing that ought to have been done.

III.   It is claimed that the proceeding to restore or establish the judgment, was in various respects irregular, and for divers reasons wholly void.

The plaintiffs in error insist that the " act relating to records and proceedings in the county of Douglas," approved Feb. 9th, 1864, is unconstitutional and void, because it does not authorize the trial to be by jury.   This presents the question whether this is a case within the meaning of the constitutional provision.   (*Bill of Rights, sec.* 5.)   " The right of trial by jury shall be inviolate." It is unnecessary to determine whether the investigation provided for in the act referred to, is strictly a " trial." Admitting for the purposes of this case, that it is a " trial," it will not follow that the act is in contravention of the constitutional provision.   That provision does not require every trial to be by jury.   Nor does it contemplate that every issue, which, by the laws in force at the adoption of the constitution of the state, was triable by jury, should remain irrevocably triable by that tribunal.   Trial by jury is guaranteed only in those cases where that right existed at common law.   Such is the meaning of the constitutional provision referred to, and in statutory proceedings, proceedings in chancery, &c., the legislature is fully competent to dispense with the jury.

It will not be seriously contended that the case at bar was a common law action.   It was a proceeding to restore the evidence of an existing judgment, not to recover a judgment for money or property.   The effect of the action

of the court might be to put the plaintiffs in a position where they would enforce the payment of money as against the defendants, but the order of the court establishing a judgment, is no more a judgment, strictly speaking, than would be an order for the entry of a judgment *nunc pro tunc.*

It is also claimed that the law is void because it authorizes the judge to rely upon his own recollection in determining the facts upon which the order establishing the judgment is made to depend. This is undoubtedly the correct view of the subject. It would be the merest mockery of justice to allow the court to substitute what it might be pleased to call its recollection for the testimony of witnesses absolutely unimpeachable. Such would not be "remedy by due course of law," and the provision of the statute referred to is void.

But in the case at bar it is very manifest that the judge did not in fact rely upon his recollection. The order was made upon an admitted state of facts. There was no contradiction in the petition of the plaintiff and the answer of the defendants. Hence the plaintiff was not aggrieved by the action of the court.

The judgment of the District Court will be affirmed.
All the justices concurring.